IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RAMON MORALES-CINTRON<br>Plaintiff<br>vs<br>GREAT AMERICAN LIFE INSURANCE COMPANY OF PUERTO RICO<br>and SEGUROS DE VIDA TRIPLE-S, INC.<br>(The Plan)<br>Defendants | CIVIL 07-1595CCC |

## OPINION AND ORDER

This action, which challenges the denial of long term disability (LTD) benefits pursuant to the Employee Retirement and Income Security Act (ERISA), 29 U.S.C. §1132, is now before us on cross-motions for summary judgment filed by plaintiff Ramón Morales-Cintrón **(docket entry 40)** and defendants Great American Life Assurance Company of Puerto Rico (Great American) and Seguros de Vida Triple-S (Triple S) (collectively, "the Administrator") **(docket entry 43)**.

The background facts follow. Morales-Cintrón obtained coverage for LTD benefits through an insurance policy (the Plan) issued for his employment with Edwards Lifesciences, where he held the position of Director of Finance (Plaintiff's Motion for Summary Judgment, at p.3). He was diagnosed with adenocarcinoma of the prostate and ceased work on March 9, 2005 (Amended Complaint, at ¶8). He underwent surgery for the condition about six weeks later on April 19, 2005. On April 15, 2005, plaintiff began psychiatric treatment for emotional symptoms including irritability, helplessness, low self-esteem, forgetfulness, insomnia and difficulty in concentration (Id., at ¶9). The psychiatrist prescribed medication and the treatment continued for months.

Plaintiff applied for LTD benefits on August 12, 2005, which were denied by a final decision issued by the Administrator on March 14, 2007. Plaintiff contends that he receives

CIVIL 07-1595CCC                                                      2

Social Security Insurance Benefits for the same disabilities, which were awarded at the initial level commencing as of March 5, 2005 (Id., at ¶6).  Thus, he claims that the Plan Administrator erred in denying his request for LTD benefits, and asks that its decision be reversed.  The Administrator, in turn, avers that the administrative record demonstrates that plaintiff failed to submit sufficient evidence to prove that he is entitled to LTD benefits under the terms of the Plan, reason enough for its decision to be affirmed.

At the outset, we note that while defendants have made much ado of the fact that plaintiff failed to include a statement of uncontested material facts in support of his motion, as required by the Court's Local Rule 56(b), such an omission is inconsequential.  After all, we are not adjudicating a summary judgment request in an ordinary civil action, but are instead reviewing a denial of LTD benefits by an ERISA's Plan Administrator based on an administrative record.  Said record is before the Court (docket entry 37),[1] and it is to this record that we must turn to in determining the relevant facts.

**Analysis**

The Court's review here is de novo because the Plan does not grant discretion to the Administrator.  See ERISA, §502(a)(1)(B), Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517-519 (1st Cir. 2005), citing Firestone v. Bruch, 489 U.S. 101, 115 (1989).  In Orndorf, the First Circuit explained this standard in the ERISA context:

> [D]e novo review generally consists of the court's independent weighing of the facts and opinions in that record to determine whether the claimant has met his burden of showing he is disabled within the meaning of the policy. While the court does not ignore facts in the record, … the court grants no deference to administrators' opinions or conclusions based on these facts.

---

[1] Hereinafter, references to the administrative record will be identified by the abbreviation "A.R." and the relevant page number.

CIVIL 07-1595CCC                                    3

> One guiding principle in conducting de novo review of this ultimate conclusion is that it is the plaintiff who bears the burden of proving he is disabled.

Id., citing Recupero v. New Eng. Tel. & Tel. Co., 118 F.3d 820, 830 (1st Cir. 1997); Terry v. Bayer, 145 F.3d 28, 34 (1st Cir. 1998) (insured bears burden of making showing sufficient to establish a violation of ERISA); GRE Ins. Group v. Met. Boston Hous., 61 F.3d 79, 81 (1st Cir. 1995).[2]

We initially note that the Group Long Term Disability Insurance Policy (Policy) at issue provides that, "[w]hen the Company receives proof that an Insured is disabled . . . the Company will pay the Insured a monthly benefit after the end of the elimination period." Defendants' Exhibit A-Section III-Benefits, at p.8 (docket entry 44). The Policy, in Section I, at page 3, defines "Elimination Period" as "a period of consecutive days of disability for which no benefit is payable. The elimination period is shown in box 12 of the application and begins on the first day of disability." In plaintiff's case, the elimination period was 180 days.[3] That means he would have to demonstrate that his alleged disability extended through and beyond September 5, 2005.

> The policy, in turn, defines "disability" and "disabled" as follows:
>
> "Disability" and "disabled" means that because of an injury or sickness:
>
> 1. The insured cannot perform each of the material duties of his regular occupation, and
>
> 2. After benefits have been paid for 12 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience."

---

[2]

[3] The administrative record (docket entry 37) which is almost 600 pages, contains no index. Defendants cite their December 12, 2005 initial decision denying benefits, at page 68, signed by Insurance Technician Gloribel Torres, to support the 180-day elimination period. There is, however, no reference to the insurance application as being part of the record.

CIVIL 07-1595CCC                                          4

      Having reviewed the administrative record, we find that defendants' decision to deny plaintiff's LTD benefits for a physical disability is amply supported by it. Dr. David Brandi, the Plan's reviewing urologist, presented a report dated January 19, 2007 (A.R., pp. 12-13) that accurately reflects the medical records submitted by plaintiff to the Administrator. All medical tests done to determine the metastasis of any cancer after plaintiff's prostate surgery were negative. Dr. Brandi identified plaintiff's urinary incontinence and impotence as common side effects of the prostate surgery and indicated that they often improve over time. While he found plaintiff's mental symptoms to be less common features, he went on to state that prostate cancer does not seem to greatly affect a patient's enjoyment of life.[4] It was his conclusion, based on Morales-Cintrón's physical medical record, as well as his continued psychiatric support and medication, that plaintiff could have resumed full work activities by six weeks after his surgery.

      With regard to Morales-Cintrón's psychiatric condition, defendants' decision to deny LTD benefits similarly relies on a peer review of plaintiff's mental health records conducted by an independent psychiatrist, Dr. Thomas H. Macaluso. In reaching the decision to deny LTD benefits to plaintiff based on his mental condition, however, the Administrator incorrectly portrays the conclusions of the Macaluso report. For one, the March 14, 2007 final decision letter of the Administrator relates that Dr. Macaluso stated that "there is no documentation of functional impairment other than limitations self-reported by Mr. Morales." A.R., at p. 567. The report, however, explicitly indicates that the records reviewed contained references to functional impairment by both the claimant "and the professional opinion offered by the treating psychiatrist." Macaluso Report, at p. 3 (A.R., p. 16.) Similarly, the Administrator in the letter denying benefits highlights Dr. Macaluso's conclusion that "there is insufficient evidence to either support or refute the claims of functional impairment." See A.R., p. 567,

---

[4] Dr. Brandi cites a journal, *Cancer* 2006:2128-2135, for this conclusion.

CIVIL 07-1595CCC                                      5

cf. Dr. Macaluso's Report, A.R. p. 16.  The Administrator, nonetheless, conveniently omitted Dr. Macaluso's observation which immediately followed said remark: "However, given the reported severity of the depression, it is not inconceivable for a high degree of functional impairment to be the result of this level of depression, especially when combined with ongoing physical difficulties."  Dr. Macaluso's Report, A.R. p. 16.

Moreover, a review of the entire administrative record shows that the "professional opinion offered by the treating psychiatrist," Dr. Eduardo Caussade, on plaintiff's functional impairments consistently established that he was disabled within the terms of the Plan due to his mental condition.  On July 15, 2005, Dr. Caussade completed a "Functional Capacities Evaluation" where he opined that plaintiff's impairments significantly affected his ability to function in the following categories: "ability to relate to other people," "ability to attend meetings, socialize with others, attend to personal needs," " perform work requiring regular contact with others," "perform work where contact with others will be minimal," "perform tasks involving minimal intellectual effort," "supervise or manage others," "perform under stress when confronted with emergency, critical, unusual or dangerous situations; or situations in which working speed and sustained attention are make or break aspects of the job," and ability to work relative to the attached job description."  Dr. Caussade also determined that plaintiff's mental condition extremely impaired his ability to function in the following category: "perform intellectually complex tasks requiring higher levels of reasoning, math and language skills."  A.R., at p. 203.  On that same date, Dr. Caussade also filled out a "Functional Capacities Estimate" where he stated that plaintiff could not work full-time or part-time, observed that he "needed to go accompanied to medical and other appointments; needs close supervision for activities of daily living," and concluded that his expected recovery date was "undetermined."  A.R., at p. 206.

Barely a month later, on August 19, 2005, Dr. Caussade answered a "Mental Status Supplemental Questionnaire" where he reiterated his diagnosis of a "major depressive

CIVIL 07-1595CCC                                                6

episode" and remarked that no improvement was expected in plaintiff's condition for the next six months.  A.R., p. 163.  Then, on February 3, 2006, Dr. Caussade completed a "Medical Assessment of Ability to Do Work Related Activities (Mental)" where he graded plaintiff, a former director of finance, as being seriously limited or unable to function in all the occupational items listed.  He also noted that plaintiff was "unable to concentrate and to follow instructions; distracts very easily; doesn't finish what he starts doing . . .; performed poor at mathematical calculation . . .; [was] unable to complete a normal workday . . . [and] need[ed] assistance for activities of daily living and supervision from others (wife) for adequate manage(sic) of his own funds."  A.R., at pp. 385-387.

There is nothing in the administrative record that would require us to obviate the consistent and repeated observations and findings of Dr. Caussade on plaintiff's high degree of functional impairments.  Dr. Caussade's findings, are actually not at all inconsistent with Dr. Macaluso's report which, contrary to what the Administrator conveys in the final decision letter, both acknowledge Caussade's professional opinion on the functional impairments and that plaintiff's severe depression could result in a high degree of functional impairment.  Dr. Caussade's conclusions, in turn, are further supported by the Psychological Report prepared on October 18, 2005 by plaintiff's clinical psychologist, Dr. Mayra del C. Rosado-Rodríguez, who concluded, among other things, that plaintiff was "not able to concentrate and perform a normal workday."  A.R., p. 415.

In sum, having reviewed the administrative record as a whole, the Court is convinced that it contains sufficient evidence showing that plaintiff is disabled within the meaning of the policy due to his mental condition as of April 15, 2005. Accordingly, defendants' Motion for Summary Judgment (**docket entry 43)** is DENIED and plaintiff's Motion for Summary Judgment (**docket entry 40)** is GRANTED.  The Administrator's decision denying

CIVIL 07-1595CCC                              7

plaintiff's application for LTD benefits is REVERSED, and the Plan Administrator is ORDERED to pay long term disability benefits to plaintiff beginning 180 days after April 15, 2005, in accordance with the terms of the policy.  Judgment shall be entered accordingly.

SO ORDERED.

At San Juan, Puerto Rico, on March 19, 2009.


                                        S/CARMEN CONSUELO CEREZO
                                        United States District Judge